# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS ARTHUR WILLIAMS, )<br> )<br>      Plaintiff, )<br> )<br>  v. )<br> )<br>AMERIQUEST MORTGAGE )<br>COMPANY; DEUTSCHE BANK )<br>NATIONAL TRUST COMPANY AS )<br>TRUSTEE FOR SECURITIZED TRUST )<br>AMERIQUEST MORTGAGE )<br>SECURITIES TRUST 2006-R2; )<br>AMERIQUEST MORTGAGE )<br>COMPANY; AMERIQUEST )<br>MORTGAGE SECURITIES INC.; )<br>AMERIQUEST MORTGAGE )<br>COMPANY; MORTGAGE )<br>ELECTRONIC REGISTRATIONS )<br>SYSTEM, AKA "MERS" AND DOES 1 )<br>THROUGH 100, INCLUSIVE )<br> )<br>      Defendants. ) | Case No. 14 CV 0401<br><br>Judge Joan B. Gottschall |

## **MEMORANDUM OPINION & ORDER**

Plaintiff Thomas Williams, proceeding pro se, filed a ten-count amended complaint stemming from a foreclosure proceeding that resulted in the sale of Williams's home. Defendants Deutsche Bank National Trust Company (Deutsche Bank) and Mortgage Electronic Registration Systems, Inc. (MERS) move to dismiss the amended complaint on several grounds, including lack of subject-matter jurisdiction. For the reasons explained below, the court agrees that it lacks subject-matter jurisdiction to consider Williams's complaint. Accordingly, the court does not reach the defendants' other grounds for dismissal. The motion to dismiss the amended complaint is granted.

# I. BACKGROUND

Williams obtained a loan on January 6, 2006, from Ameriquest Mortgage Company that was secured by a mortgage on property at 1955 South Harding Avenue in Chicago. The mortgage was assigned to Deutsche Bank on February 11, 2009. Williams eventually defaulted on the loan, and a foreclosure action followed.

Williams moved to dismiss the foreclosure action, arguing that Deutsche Bank was not the holder of the note. The Cook County Circuit Court entered a judgment for foreclosure and sale on August 8, 2011. The property was then sold to Deutsche Bank through a judicial sale in November 2011. Williams challenged Deutsche Bank's standing to foreclose in 2012, but the Cook County Circuit Court entered an order approving the sale of the property and granting possession to Deutsche Bank on February 8, 2012.

Williams brought a suit against Deutsche Bank in Cook County Circuit Court on October 4, 2012, seeking quiet title to the property, arguing that Deutsche Bank did not have standing to foreclose and that Deutsche Bank violated the federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f, the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617, and had illegally securitized the promissory note. The court dismissed Williams's claim to quiet title for failure to state a claim; dismissed with prejudice the claim challenging Deutsche Bank's standing to foreclose as barred by collateral estoppel; and dismissed the TILA, RESPA, and illegal securitization claims for failure to meet Illinois's pleading standards. Williams filed two additional amended complaints reasserting the standing issue. Ultimately, Williams's second amended complaint was dismissed with prejudice.

On January 21, 2014, Williams filed a twelve-count complaint in this court. Defendants MERS and Deutsche Bank moved to dismiss the complaint on March 28, 2014. On April 16,

2014, before the court had an opportunity to decide the motion to dismiss, Williams filed a ten-count amended complaint. Now before the court is the defendants' motion to dismiss the amended complaint.

## II. LEGAL STANDARD

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a claim if it lacks subject-matter jurisdiction over it. *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."). When deciding a motion to dismiss pursuant to Rule 12(b)(1), the court accepts "as true all facts alleged in the well-pleaded complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). Because Williams proceeds pro se, the court construes his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Pursuant to Rule 12(g)(2) of the Federal Rules of Civil Procedure, a defendant "must consolidate its Rule 12(b) defenses into one motion rather than raise them seriatim." *Rawlins v. Select Specialty Hosp. of N.W. Ind., Inc.*, No. 13 C 7557, 2014 WL 1647182, at *2. The court assesses subject-matter jurisdiction before addressing other defenses. *See Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987).

## III. ANALYSIS

**A.   Standing**

Williams bases his claims for wrongful foreclosure (Count 1), fraud in the inducement (Count 3), intentional infliction of emotional distress (Count 4), slander of title (Count 5), quiet title (Count 6), and declaratory relief (Count 7) on the "facts and circumstances surrounding [his] original loan transaction and subsequent securitization." (Am. Compl. ¶ 15, ECF No. 29; *see id.*

¶¶ 57, 87, 96, 106, 117, 122.)[1] In each count, Williams alleges that his injury stems from the fact that the mortgage note was not properly transferred to Deutsche Bank under the terms of the pooling and servicing agreement (PSA) governing Williams's mortgage loan. (*See id.*) The defendants argue that Williams lacks standing to challenge the securitization of his loan and the assignment of the note and mortgage. Williams offers no direct response to defendants' arguments.[2]

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To meet the minimum standing requirements of Article III, a plaintiff must prove three elements: (1) he suffered a concrete and particularized injury that is actual or imminent; (2) the injury is fairly traceable to the defendant's action; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

The court need not determine whether there were defects in the way that the mortgage was transferred to Deutsche Bank under the PSA. "This is because . . . [the] borrower[] is not a party to the PSA, and courts have generally held that third parties do not have standing to enforce the terms of a PSA." *HSBC Bank USA, N.A. v. Hardman*, No. 12 C 00481, 2013 WL 515432, at

---

[1] Williams's amended complaint indicates that his claims for violations of TILA, RESPA, and rescission (Counts 8, 9, and 10, respectively) also depend on the "facts and circumstances" surrounding his loan's securitization. (Am. Compl. ¶ 15.) But, the court must construe Williams's complaint liberally because he proceeds pro se. In construing the complaint liberally, the court concludes that Counts 8, 9, and 10 of the amended complaint do not depend on the purported defect in the pooling and servicing agreement, and therefore the defendants' challenge to Williams's standing is limited to Counts 1, 3, 4, 5, 6, and 7 of the amended complaint.

[2] Instead, Williams filed a 119-page "Memorandum of Points and Authorities in Support of Plaintiff's Amended Petition with Affidavit of Facts." (ECF No. 34.) The court construes this memorandum as Williams's response to the defendants' motion to dismiss.

*6 (N.D. Ill. Feb. 12, 2013) (citing cases). The PSA has no effect on a borrower's obligations under a mortgage because the PSA is "a contract entirely separate from the note and mortgage." *Bank of N.Y. Mellon v. Fleming*, No. 11 C 3573, 2013 WL 241153, at *2 (N.D. Ill. Jan. 18, 2013).

Because the PSA did not affect Williams's obligations under the mortgage, Williams cannot demonstrate that he suffered an injury fairly traceable to a defect in the mortgage-transfer process. *See, e.g.*, *id.*; *Livonia Prop. Holdings v. Farmington Rd. Holdings*, 717 F. Supp. 2d 724, 748 (E.D. Mich. 2010). The court dismisses Counts 1, 3, 4, 5, 6, and 7 of the amended complaint because they depend on defects in the securitization process, and Williams lacks standing to challenge that securitization.

**B.**     *Rooker-Feldman* **Doctrine**

Defendants argue that each count of Williams's amended complaint should be dismissed under the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, federal district courts do not have subject-matter jurisdiction over claims brought by parties who are challenging adverse state court judgments. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (construing *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983)). The *Rooker-Feldman* "doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Id.*

Because the court dismisses Counts 1, 3, 4, 5, 6, and 7 based on standing, it need not consider whether the *Rooker-Feldman* doctrine represents a jurisdictional bar to those claims. The court confines its *Rooker-Feldman* analysis to the remaining claims (Counts 2, 8, 9, and 10).

The court concludes that under *Rooker-Feldman*, it lacks subject-matter jurisdiction to consider these claims.

### 1. Fraud in the Concealment (Count 2)

In Count 2 of the amended complaint, Williams alleges that the defendants fraudulently concealed the securitization of the loan agreement. Williams argues that had he known that the loan would be securitized, he would not have entered into the loan. As a result, he seeks actual and punitive damages from the defendants.

The defendants seek to dismiss Count 2 for lack of subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. The defendants argue that Count 2 is "inextricably intertwined" with the state-court action and that Williams should have raised the claim as a counterclaim or affirmative defense. (Mot. to Dismiss 9, ECF No. 30.)

The defendants' argument is more akin to a res judicata argument than a *Rooker-Feldman* argument. This court has little doubt that it would dismiss Count 2 on res judicata grounds if it were to reach that question. But, "[w]here *Rooker-Feldman* applies, lower federal courts have no power to address other affirmative defenses, including res judicata." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). The Seventh Circuit has "consistently emphasized the distinction between res judicata and *Rooker-Feldman* and insisted that the applicability of *Rooker-Feldman* be decided before considering res judicata." *Id.*

The *Rooker-Feldman* doctrine applies if "the injury alleged by the federal plaintiff resulted from the state court judgment itself." *Id.* Here, the injury alleged by Williams resulted from the state-court judgment for foreclosure and sale. Without that judgment, Williams would not have experienced injury from the purportedly fraudulent concealment of the loan's

6

securitization. Williams's complaint does not allege an injury that is distinct from the injury arising from the foreclosure.

The court concludes that Count 2 of the amended complaint is inextricably intertwined with the state judgment. Accordingly, the *Rooker-Feldman* doctrine applies, and the court lacks subject-matter jurisdiction over the claim.

### 2. Truth in Lending Act; Real Estate Settlement Procedures Act (Counts 8-10)

Counts 8 and 9 of the amended complaint allege violations of the federal Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA), respectively. Count 10 seeks rescission of the mortgage based on the purported TILA violation. Many courts have held that TILA and RESPA claims in this context are so closely "intertwined" with the state-court foreclosure actions that the *Rooker-Feldman* doctrine applies. *See, e.g.*, *Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 944 (N.D. Ill. 2005) (TILA and RESPA); *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (affirming the district court's determination that *Rooker-Feldman* precludes jurisdiction over a TILA-based rescission claim because it would negate the state court's foreclosure judgment); *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 892-93 (11th Cir. 2008) (affirming the district court's dismissal pursuant to *Rooker-Feldman* of a claim made under TILA); *Canen v. U.S. Bank N.A.*, 913 F. Supp. 2d 657, 662 (N.D. Ind. 2012) (TILA). *But see, e.g.*, *Hochstetler v. Fed. Home Loan Mortg. Corp.*, No. 3:12-CV-772-JVB, 2013 WL 3756502, at *5 (N.D. Ind. July 16, 2013) (holding that a TILA claim "pass[es] the *Rooker-Feldman* bar" because it provides an independent financial remedy notwithstanding a state-court foreclosure judgment).

In *Ruffino v. Bank of America, N.A.*, 2013 WL 5519456 (N.D. Ill. Oct. 3, 2013), the court acknowledged that the federal claims are a "closer call with respect to the *Rooker-Feldman*

doctrine." *Id.* The court also recognized that courts have split on whether the doctrine precludes federal courts from considering claims under TILA and RESPA in the face of a state-court foreclosure judgment. *Id.* Ultimately, the *Ruffino* court dismissed the TILA and RESPA claims on alternate grounds.

The court agrees with the majority of courts that have determined that the TILA and RESPA claims face a *Rooker-Feldman* bar. For *Rooker-Feldman* to apply, Williams must have had a reasonable opportunity to raise the federal claims in the state-court proceedings. *Long*, 182 F.3d at 558. Illinois courts have jurisdiction over federal claims—including the Truth in Lending and Real Estate Settlement Procedures Acts, *Byrd*, 407 F. Supp. 2d at 943—and Williams had the opportunity to raise the alleged TILA and RESPA violations in state court. Moreover, Williams's injuries arise from the state court's judgment of foreclosure. "Absent the state court's judgment of foreclosure . . . [Williams] would not now have the injury [he] seeks to redress" with his TILA and RESPA claims. *Id.* at 944. The court concludes that the TILA and RESPA claims are "inextricably intertwined" with the state-court judgment, and thus the *Rooker-Feldman* doctrine applies. *See Long*, 182 F.3d at 554. The court lacks subject-matter jurisdiction to consider Counts 8, 9, and 10 of the amended complaint.

C.  **Additional Claims in Williams's Response**

Williams asserts four new claims in his Memorandum of Points and Authorities in Support of Plaintiff's Amended Petition With Affidavit of Facts, which the court liberally construes as Williams's response to the defendants' motion to dismiss. The four new claims are: (1) "violation of SEC and RICO Statute" (Mem. at 68-73, ECF No. 34); (2) "vested and superior title by means of Allodial Title ownership" (*Id.* at 102-05); (3) "Counterfeit Security Fraud" (*Id.*

at 105-08); and (4) tort of conversion through "Illegal Securitization of Promissory Note" (*Id.* at 108-11).

Williams may not raise these claims for the first time in his response brief.  Although, in deciding a motion to dismiss, the court may consider additional facts alleged in a response brief, *see Help At Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001), a plaintiff may not raise entirely new claims.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).  But even if Williams had properly included these claims in the amended complaint, the court would have dismissed the claims.

In the "violation of SEC and RICO Statute" claim, Williams alleges: "The Foreclosure Case should have been . . . settled and Judgment . . . should have been vacated."  (Mem. at 68.) Since Williams appears to be challenging the previous state-court rulings, *Rooker-Feldman* would bar this claim.

The claim alleging "allodial title" would be dismissed for failure to state a claim upon which relief could be granted.  *See Wisconsin v. Glick*, 782 F.2d 670, 671-73 (7th Cir. 1986); *Flores v. Wells Fargo Bank, N.A.*, No. 12-C-1191, 2013 WL 1192767, at *2 (E.D. Wis. Mar. 22, 2013) ("Courts have considered these types of claims [for allodial title] in other cases and have uniformly rejected them, with most courts deeming the claims frivolous.").  Nowhere in Williams's discussion of land patents and allodial title does he include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Williams's claim for "Counterfeit Security Fraud" pursuant to 18 U.S.C. § 513 is not viable.  While 18 U.S.C. § 513 is part of the federal criminal code, construing the claim liberally, it appears that Williams is asserting a claim for securities fraud.  The "pleadings" included in the "security fraud" claim do not contain any specific facts that would allow the claim to proceed.

Williams merely alleges that Deutsche Bank is "factitious and fictitious" and "does not exist in this case as a defendant." (Mem. at 105.) These conclusory pleadings do not meet the specificity requirements for fraud in Rule 9(b) of the Federal Rules of Civil Procedure. *See In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281-82 (7th Cir. 1996).

The final added claim is for unlawful conversion. Offering no factual allegations, Williams fails to state a claim for which relief can be granted. Moreover, in Illinois, a conversion action does not exist for real property. *See Cocroft v. HSBC Bank USA, N.A.*, 2012 WL 1378645, at *9 (N.D. Ill. April 20, 2012).

## IV. CONCLUSION

The court concludes that it lacks subject-matter jurisdiction over the claims in Williams's amended complaint. Thus, the court does not reach the defendants' other grounds for dismissal. The defendants' motion to dismiss the amended complaint is granted. As a housekeeping matter, the defendants' motion to dismiss the original complaint is denied as moot.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: July 24, 2014

10